THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALBERT BURKE, Plaintiff in Error.

*Opinion filed June 16, 1926—Rehearing denied October 12, 1926.*

1. CRIMINAL LAW—*what is sufficient to establish corpus delicti in larceny—evidence.* Where an eye-witness, who is not contradicted, testifies that he saw the defendant and a companion open the money box attached to a telephone, that he searched them immediately thereafter and found a number of dimes, nickels and quarters and a bunch of keys, that he had placed two dimes in the box and that there were no dimes there when an employee of the company opened the box the next day, the *corpus delicti* and the guilt of the defendant are sufficiently established, and he cannot complain of evidence of the circumstances of his arrest six months later, nor will his conviction be reversed because of the admission in evidence of the money and keys without proper identification.

2. SAME—*when admission of incompetent evidence will not require a reversal.* Where a conviction is sustained by competent evidence establishing the defendant's guilt beyond all reasonable doubt, it will not be reversed for the admission of incompetent evidence which could not reasonably have affected the verdict.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. EMANUEL ELLER, Judge, presiding.

FRANK A. McDONNELL, and S. B. McDONNELL, JR., (ELWYN E. LONG, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error, Albert Burke, was convicted in the criminal court of Cook county on an indictment charging him with stealing six dollars, the money of the Illinois

Bell Telephone Company, on October 7, 1922, and with having been previously convicted of larceny. The jury by their verdict found him guilty and that he had been previously convicted of petit larceny in the municipal court of Chicago. He was sentenced to confinement in the penitentiary and has sued out a writ of error to reverse the judgment.

A former judgment was reversed because the evidence failed to sustain either of the allegations that money had been stolen or that the property was the property of the Illinois Bell Telephone Company. (*People* v. *Burke,* 313 Ill. 576.) That case is referred to for a sufficient statement of the facts.

The evidence shows, as it did on the first trial, that if there was money in the money box attached to the telephone it was stolen by the plaintiff in error and his companion, Murray. It also shows that if there was money in the box it was the property of the Illinois Bell Telephone Company. No evidence was offered by the plaintiff in error. He claims that the evidence does not show that there was any money in the box attached to the telephone and therefore the *corpus delicti* was not shown. Fred Korber testified that on October 7, before the larceny, he made two calls over the telephone, which was a pay telephone, and deposited two dimes in the box. The next morning Fred W. Brown, an employee of the telephone company, opened the box and found two nickels there. The larceny was committed about six o'clock in the evening. Korber saw the money drawer open as the plaintiff in error and his companion, Murray, stood at the telephone, saw and heard Murray close the drawer and heard the sound of money. He then took the two into custody and took from Murray's pocket twelve to fifteen keys and a handful of nickels, dimes and quarters. The telephone was arranged to receive only nickels, dimes and quarters. The keys and the money were placed on the desk of Justice Bieswanger, who had died after the first

trial, and therefore the money and keys taken from Murray's pocket were not completely identified. There is, however, no reasonable doubt that the plaintiff in error and Murray stole from the box at least the two dimes which Korber had placed there. The plaintiff in error and Murray had the box open and Korber heard the clink of money. The drawer was then closed, and when it was unlocked the next morning two nickels, only, were found in it. No testimony was introduced to weaken the force of this evidence, which established the larceny of the two dimes, and the unusual coincidence of finding Murray, upon being searched immediately after the larceny, in possession of a handful of nickels, dimes and quarters, certainly had a tendency to corroborate the proof of larceny. Clear proof was made of the *corpus delicti* without contradiction.

The plaintiff in error contends that the judgment should be reversed because of the admission, over his objection, of certain incompetent evidence. Certain coins were admitted in evidence as being the coins which were taken from Murray immediately after the closing of the money box. They were four quarters, twenty dimes and fifty nickels. Korber testified that he put the coins and keys which he took from Murray's pocket on Bieswanger's desk without counting the money, and Bieswanger's daughter, Grace, testified that he put the coins in a rubber bag, which he gave to her and she carried it up-stairs and put it in a drawer of the bureau. She saw it afterward a number of times. The next morning Bieswanger brought a rubber bag downstairs and exhibited the coins that were in it, and some keys, to Fred W. Brown. Brown testified that the coins were of the number and denominations of the coins which were offered in evidence in this case, and identified two of the coins admitted in evidence as two of the coins which he saw on October 8,—one a twenty-five cent piece, which he identified by its edges having been burned, and the other a five-cent piece,—an old coin not now minted,—

322—18

very smooth on one side and with only a figure "5" visible on the other. Neither Korber nor Miss Bieswanger was able to testify positively that the coins introduced in evidence were the same coins that were taken from Murray, nor did either of them know the number of coins of any denomination or their total amount. Two of the keys, when tried, unlocked the money box. The identification of the coins and the keys was of no importance. It had been clearly proved before they were offered that the larceny was committed by the plaintiff in error and Murray, and this proof would not have been affected by proof of the exact amount stolen or of Murray's possession of keys which would open the box. Since it was proved that the plaintiff in error and Murray did open the box and steal twenty cents, and that proof was without contradiction, the evidence as to the coins and keys was not prejudicial to the plaintiff in error.

Evidence was also admitted of the method of bookkeeping of the telephone company in regard to long distance calls and collections from boxes of public telephones. This evidence had only to do with the amount of money in the box, and since it is uncontradicted that there were two dimes in the box which were stolen, the evidence as to whether more money was taken was immaterial on the question of the plaintiff in error's guilt.

Charles E. Egan testified that he arrested the plaintiff in error on April 19, 1923, and that Burke shoved something into his mouth, whereupon Egan hit him on the back of the neck and Burke spit out a bunch of keys. In response to questions of Egan the plaintiff in error said they were keys for telephone boxes, and he got them from a man at Thirty-fifth and Morgan streets and intended to make duplicates of them. He gave his address on Calumet avenue, but upon investigation a sausage factory was found located there. Egan afterward learned his correct address and searched his room, where he found some locks, a note-

book, file and money wrappers. All this evidence was admitted over the objection of the plaintiff in error. The arrest was six months after the larceny. But even if the testimony was improperly admitted the defendant has no reason to complain of it. The plaintiff in error was clearly proved guilty by an eye-witness whose testimony is uncontradicted or impeached in any way. He testified that the plaintiff in error and Murray came into the store, where the telephone was, about six o'clock in the evening and asked if they might use the telephone. Korber told them yes; there it was; and went back to the little room in the back of the store where Bieswanger had his office as justice of the peace and sat down, facing the store. He could see the whole inside of the store from where he sat. The telephone was ten or twelve feet from him. The two men went to the telephone and Korber heard them talk. He looked around the store toward the telephone and down the street. He happened to look toward the telephone and saw Murray shove the money box back in the telephone. Burke was standing at Murray's right,—probably a foot from him and a foot from the telephone, which was between their shoulders. He could see them both and could also see the telephone from where he was sitting. When he saw the box it was out from 'the telephone four or five inches. He heard the box and also heard money. He could not see whether it was in the box or where it was, but he heard the money rattle. He got up and walked toward the front part of the store, and when Murray and Burke left the telephone to go out he asked what seemed to be the trouble. Murray said, "We cannot get no service here; we may go somewhere else where we may get service." Korber, who was a Cook county constable, told them they had better go back in the office and find out what was wrong. Before he took them back in the office Murray said, "What is it all about? Why, we will go out and get service somewhere else." Korber said, "No, you just wait a while and find out what

is wrong." He took them back in the office, called Justice Bieswanger down from his living room up-stairs, and Bieswanger told him they had better search the men. He did so and found the money and keys which have been mentioned.

Where a conviction of crime is sustained by competent evidence establishing the defendant's guilt beyond all reasonable doubt, it will not be reversed for the admission of evidence, though incompetent, which could not reasonably have affected the verdict.

The judgment is affirmed.                    *Judgment affirmed.*